JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Sami Watters ("Watters") appeals from the decision of the Cuyahoga County Court of Common Pleas finding him guilty of robbery in violation of R.C. 2911.02(A)(1).
 {¶ 2} The following facts give rise to this appeal.
 {¶ 3} Watters went to a Walgreen's drugstore with the intention of "shoplifting" something of value from the store. He was residing in a homeless shelter and was unemployed. He claimed he needed money for food. He ended up stealing a box of cigars valued at $25. As he left the store without paying, the store alarm went off. An employee told him to stop. Watters ran out of the store and down the street. Another store employee pursued him but eventually gave up the chase. That employee found a small knife that the employee claimed Watters dropped while being chased. Watters was later apprehended after a brief chase by Cleveland police, and the merchandise was recovered.
 {¶ 4} Watters admitted that he had a knife in his pocket during the theft but denied brandishing the weapon or dropping it during his flight from the store. Following a trial, Watters was convicted of robbery. It is from this finding of guilt and allegation of other errors that Watters appeals, advancing two assignments of error.
 {¶ 5} Watters' first assignment of error is as follows:
 {¶ 6} "Assignment of error no. 1: Appellant was denied his right to effective assistance of counsel guaranteed by the United States Constitution Amendments VI and XIV, and Ohio Constitution, Article I, was denied his right to due process and a fair trial, guaranteed by the United States Constitution, Article I, Section 16, as a result of prosecutorial misconduct in questioning witnesses and in closing argument."
 {¶ 7} Watters' first assignment of error presents two distinct legal arguments. We will address them separately.
 {¶ 8} Watters claims that his counsel was ineffective in failing to object to the form and substance of certain questions asked of witnesses by the prosecutor.
 {¶ 9} "To prove ineffective assistance of counsel, a defendant must show that his lawyer's representation fell below reasonable professional standards, and that he was prejudiced as a result. The `professional standards' element normally focuses on whether the lawyer's conduct should be viewed as an error or as a reasonable strategic decision, while prejudice is shown if, but for the lawyer's errors, there is a reasonable probability the outcome of the trial would have been different." State v.Wente, Cuyahoga App. No. 81850, 2003-Ohio-3661.
 {¶ 10} Specifically, Watters cites the following in support of his ineffective assistance claim:
"[Prosecutor]. You weren't about to
 "A. — attempt to stop him no further.
 "[Prosecutor]. Okay. Because of why?
 "A. Because he had something silver in his hand
 "[Prosecutor]. And you thought it might be a knife?
 "A. Yes.
 "[Prosecutor]. Right. And when the knife was recovered minuteslater from him, you thought that it was probably his knife?
 "A. Right."
 {¶ 11} This exchange occurs during the re-direct examination of this witness. During her direct examination the witness offered the following:
"A. * * * And in the meantime I had seen something reflectingout of his hands so I wasn't going to try and stop him. * * *.
 "[Prosecutor] Okay. Let me stop you right there. You said yousaw something reflecting in his hand What do you mean by that?
 "A. Something silver in his hands.
 "[Prosecutor] And what did you think it was?
 "A. A knife."
 {¶ 12} Therefore, it did not fall below reasonable professional standards for counsel not to object to the leading questions on re-direct as the information elicited on re-direct was already in evidence from that same witness.
 {¶ 13} Watters also cites the following passage:
"[Prosecutor]. Okay, Now, are you aware if the defendant, SamWatters, was taken into custody at the time of the incident?
 "A. Yes.
 "[Prosecutor]. And if you know, has he been in custody sincethat time?
 "A. Yes, he has."
 {¶ 14} Watters asserts that he had "an inviolate right" to be at the trial table without any mention that he was in jail while his trial was progressing. Watters cites no authority for such a right. Watters' argument traces its origin to the practice of permitting inmates to wear civilian clothing they provide during jury trials. The rationale is that being compelled to wear prison or jail clothing erodes the presumption of innocence. State v.Heckler (July 15, 1994), Pickaway App. No. 93CA10.
"The actual impact of a particular practice on the judgment ofjurors cannot always be fully determined. But the probability ofdeleterious effects on fundamental rights calls for closejudicial scrutiny. Courts must do the best they can to evaluatethe likely effects of a particular procedure, based on reason,principle, and common human experience. The potential effects ofpresenting an accused before the jury in prison attire need not,however, be measured in the abstract. Courts have, with fewexceptions, determined that an accused should not be compelled togo to trial in prison or jail clothing because of the possibleimpairment of the presumption so basic to the adversary system.This is a recognition that the constant reminder of the accused'scondition implicit in such distinctive, identifiable attire mayaffect a juror's judgment. The defendant's clothing is so likelyto be a continuing influence throughout the trial that, notunlike placing a jury in the custody of deputy sheriffs who werealso witnesses for the prosecution, an unacceptable risk ispresented of impermissible factors coming into play."
Id.
 {¶ 15} This logic should be equally applied to verbal references concerning the jail status of an accused. Whether the reference is visual or verbal, the potential for prejudice is the same. Here, Watters appeared in civilian clothing, but the prosecutor elicited a comment on his status in jail.
 {¶ 16} While the question and resulting answer were improper, they did not affect the outcome of the case in light of the overwhelming evidence against Watters. Watters' admissions that he stole from the store and possessed the knife are controlling. In light of this evidence the remark did not unjustly prejudice Watters in the full context of this trial.
 {¶ 17} Further, later in the trial, Watters himself commented on his jail status in an apparent effort to create sympathy.
"Q. Okay. Are you still employed today?
 "A. Ma'am, I have been incarcerated since April 10th.
 "Q. Okay. And approximately how long before you wereincarcerated had you been unemployed?
 "A. I'd have to say December 20th or something, it wasright before Christmas."
 {¶ 18} We have stated many times that the test for prosecutorial misconduct is whether the remarks made were improper and, if so, whether the rights of the accused were materially prejudiced. State v. Smith (1984), 14 Ohio St.3d 13,14. The conduct of a prosecuting attorney during the course of trial cannot be made a ground for error unless that conduct deprived the defendant of a fair trial. State v. Papp (1978),64 Ohio App.2d 203. In the face of the admissions and the evidence as a whole, we cannot say Watters was denied a fair trial.
 {¶ 19} The second portion of this assignment of error alleges prosecutorial misconduct during closing argument. Watters' counsel did not object to any statements by the prosecutor during closing argument; therefore, we are compelled to consider these claimed errors under the plain error standard. State v. Hartman
(2001), 93 Ohio St.3d 274. To constitute plain error, it must appear in the record that error occurred, and that but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 20} The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards
(1966), 6 Ohio St.2d 14. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v. United States (1935), 295 U.S. 78. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. State v. Potter, Cuyahoga App. No. 81037, 2003-Ohio-1338.
 {¶ 21} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. Id. The analysis is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982),455 U.S. 209.
 {¶ 22} Watters first alleges that this passage constitutes prosecutorial misconduct: "What do you think? Is a knife specially adapted as a weapon? I think it is. So there's no question at all."
 {¶ 23} This comment must be considered in context. The statement was not an isolated assertion as to the character of the knife; it was a response to the assertion of Watters' counsel during his closing argument that the knife was not, in fact, a deadly weapon. One page prior to the above comment, the transcript reveals that the prosecutor stated that "[Counsel's] definition of what this is is wrong. Go to the second part of what a deadly weapon is * * *."
 {¶ 24} Even if the prosecutor was telling the jury what she thought about the evidence, she was clearly doing so in response to Watters' counsel having done so first. Taken in context, we cannot say that this comment was error.
 {¶ 25} Next Watters cites the following passage as prosecutorial misconduct: "And God forbid if he would have been stopped. Because why do you think he had that knife on him?"
 {¶ 26} Again, the completion of this line of comment reveals that it was permissible argument. The prosecutor's very next statement is as follows: "I don't know, folks. But guess what, he wasn't coming from his roofing job. He wasn't using it to roof."
 {¶ 27} The prosecutor is clearly permitted to argue to the jury that Watters' argument that he used the knife for roofing is inconsistent with other evidence in the case.
 {¶ 28} In addition, a page before this comment, the prosecutor references the argument of Watters' counsel that the law required Watters to brandish the weapon to consider his conduct a robbery. "Mr. Mack wants you to believe that the defendant in this case needed to brandish this weapon. Needed to stick in their faces. * * * That is not the case."
 {¶ 29} In context, we cannot say the prosecutor's comments rose to the level of prosecutorial misconduct. This assignment of error is overruled.
 {¶ 30} Watters' second assignment of error is as follows:
 {¶ 31} "Assignment of error no. II. Appellant's conviction was against the manifest weight of the evidence and was based on insufficient evidence for a jury to render a guilty verdict."
 {¶ 32} This second assignment of error again raises two distinct legal arguments.
 {¶ 33} State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin,20 Ohio App.3d at 175. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Id.
 {¶ 34} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in Statev. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison (1985),23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include: "1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.
 {¶ 35} R.C. 2911.02, the robbery statute, prohibits a person who is committing a theft offense, or fleeing after committing a theft offense, from having a deadly weapon on or about the offender's person or under his control. Watters testified he committed a theft while in possession of a knife. Whether the knife was a deadly weapon was a question of fact for the jury, which they resolved in the affirmative.
 {¶ 36} A deadly weapon is defined in R.C. 2923.11 as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." A knife is not, per se, a deadly weapon. However, a knife is an instrument readily identifiable as one capable of inflicting death. See, e.g., State v. Curnutte,
(Sept. 9, 1987), Lorain App. C.A. Nos. 4189, and 4198, citingState v. Anderson (1981), 2 Ohio App.3d 71; State v. Thorpe
(Oct. 9, 1985), Lorain App. No. 3856.
 {¶ 37} In order to show appellant was carrying a deadly weapon, the state was required to prove either 1) that the knife was designed or specifically adapted for use as a weapon, or 2) that the defendant possessed, carried, or used the knife as a weapon. State v. Cathel, (1998) 127 Ohio App.3d 408, 411-412;Columbus v. Dawson (1986), 28 Ohio App.3d 45, 46; State v.Cannon, Cuyahoga App. No. 81799, 2003-Ohio-2195.
 {¶ 38} A review of the record in this case shows that appellant had the knife displayed in his right hand during the commission, or during the flight immediately after the commission, of the theft offense. While there was no evidence the knife was used to threaten or intimidate store personnel, the statute requires no such conduct. The jury evaluated Watters' claims that the knife was only used to open cans of roofing cement and that it remained in his pocket during the time of the theft, and the jury rejected both assertions. An ordinary knife is adaptable to many legal uses. However, such a device may be carried or possessed as a weapon. It is reasonable to infer from the evidence in this case that the knife was displayed during the offense and that it was being used, or the defendant intended it to be used, as a weapon. In an analogous case, the Second District in State v. Nobles (Nov. 26, 1986), Montgomery App. No. 9721, stated:
"Here, the defendant was in possession of the weapon afterbeing pursued and fleeing immediately after the commission of atheft offense, and a jury reasonably could infer from theattending circumstances that the knife was `carried' as a weapon.Indeed, if cornered by his pursuers, Nobles could readily haveturned the deadly weapon to a prohibited use. In our opinion,therefore, the state of the evidence upon the question of whetherthe knife was carried by the defendant as a weapon is such as topreclude any interference from a reviewing court. State v.Eley, 56 Ohio St.2d 169."
 {¶ 39} The fact the weapon was openly carried and displayed is sufficient evidence for a jury to determine that the knife was a deadly weapon. Had the knife remained in Watters' pocket during the offense, as opposed to being displayed in his hand, that conclusion would not be possible. State v. Kimbro (May 1, 1996), Lorain App. No. 95CA006167.
 {¶ 40} Under these facts, we find that reasonable minds could conclude that appellant "possessed, carried, or used" the knife as a weapon. Further, after reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we are not persuaded that the court clearly lost its way and created such a manifest miscarriage of justice such that Watters' conviction must be reversed and a new trial ordered.
 {¶ 41} Watters' second argument under this assignment of error argues that the evidence was insufficient to sustain his conviction.
 {¶ 42} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court held that "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 43} Watters claims that the evidence at trial was insufficient to sustain a conviction. He argues that some inconsistencies or vague statements by some of the state's witnesses represent insufficient evidence for the jury to have found that he did in fact commit a theft and had a knife in his possession during that theft. This is a contradictory argument because Watters himself admitted these essential facts during his testimony.
 {¶ 44} In any event, taking all the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Thus, Watters' conviction is sustained by sufficient evidence. This assignment of error is overruled.
 {¶ 45} The judgment is affirmed.
Judgment affirmed.
 Kilbane, P.J., and Karpinski, J., concur.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.