JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Lorenzo Collins, brings this appeal challenging his convictions and sentences for murder, aggravated arson, and arson. After a thorough review of the record and for the reasons set forth below, we reverse and remand for a new trial.
 {¶ 2} On June 27, 2006, appellant was indicted on four counts of aggravated murder, with prior calculation and design; four counts of aggravated murder, with felony-murder specifications; four counts of aggravated murder, with specifications that the victims were under the age of 13; four counts of aggravated arson; an additional count of aggravated arson; and one count of arson. All of the aggravated murder counts carried the possibility of the death penalty.
 {¶ 3} A jury trial commenced on March 2, 2007. The testimony at trial revealed that four children, siblings under the age of 13, died of asphyxiation in an apartment fire that occurred on April 4, 2006. Several inhabitants of the apartment building escaped serious injury, including the children's mother and youngest sibling. Fire investigators determined that the fire was intentionally set. The two suspects identified through the initial police investigation were appellant and co-defendant, Collins Bennett.
 {¶ 4} The jury returned the following verdicts: not guilty on all charges of aggravated murder with specifications of felony murder and victim under 13 years of age; guilty on four counts of the lesser-included offense of murder, in violation of R.C. 2903.02(B), with specifications of felony murder and victim *Page 4 
under 13 years of age (Counts 5 through 8); guilty on four counts of aggravated arson, in violation of R.C. 2909.02(A)(1) (Counts 13 through 16), first degree felonies; guilty on one count of aggravated arson, in violation of R.C. 2909.02(A) (2) (Count 17), a first degree felony; and guilty of arson, in violation of R.C. 2909.03(A)(1) (Count 18), a third degree felony.
 {¶ 5} The trial court sentenced appellant to 106-and-one-half years to life, which included 15 years to life on each of Counts 5-8; ten years to life on each of Counts 13-16; five years on Count 17; and one-and-one-half years on Count 18. The judgment entry also included the following language: "Postrelease control is part of this prison sentence for five years for the above felony(s) under R.C. 2967.28," although the court never mentioned the imposition of postrelease control at the sentencing hearing.
 {¶ 6} Appellant raises six assignments of error; however, we find that our ruling on the first assignment of error renders the remaining assignments moot.[1]
 Review and Analysis {¶ 7} "I. The defendant was denied his right to a fair and impartial trial when the court commented to the jury that the defendant was in jail, even though the defendant appeared at trial in civilian clothing."
 {¶ 8} In his first assignment of error, appellant argues that the trial court should have granted him a mistrial after it improperly commented on the fact *Page 5 
that he was incarcerated. Specifically, he argues that the trial court's comments suggested that he was incarcerated because he posed a safety threat to the jurors.
 {¶ 9} In evaluating whether the declaration of a mistrial was proper in a particular case, courts have declined to apply inflexible standards due to the infinite variety of circumstances in which a mistrial may arise. Instead, an approach has been adopted that grants great deference to the trial court's discretion in this area in recognition of the fact that the trial judge is in the best position to determine whether the situation in their courtroom warrants the declaration of a mistrial.
 {¶ 10} A trial court's denial of a motion for mistrial will not be reversed on appeal absent an abuse of discretion. Apaydin v. ClevelandClinic Found. (1995), 105 Ohio App.3d 149, 152, 663 N.E.2d 745. An abuse of discretion is found where a decision is so grossly violative of fact and logic that it demonstrates a perverse will, a defiance of judgment, undue passion, or extreme bias. Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87, 482 N.E.2d 1248.
 {¶ 11} In the case before us, prior to voir dire, the trial court admonished the jury with the following words: "Don't talk to your fellow jurors about how you answered the questionnaire. Do not talk about the case at all. John and Pinkey and Harvey and Ben, you might see us at the cafeteria, the defendant is incarcerated, you're not going to see him in the cafeteria, I just want you to know that for security purposes, * * *." (Tr. 48-49.)
 {¶ 12} After the panel of prospective jurors were sworn, defense counsel made an objection to the trial court's comments at sidebar. At that point, the *Page 6 
trial court offered to give a curative instruction, but none was given. When court reconvened that afternoon, defense counsel moved for a mistrial on the grounds that appellant had dressed in a suit for the express purpose of not letting the jury know he was incarcerated, and that the trial judge's comments suggested that appellant was incarcerated because he was a dangerous person. Counsel argued that the comments were unduly prejudicial and warranted a mistrial.
 {¶ 13} The trial court denied appellant's motion for a mistrial, but again offered to give a curative instruction. The trial court also stated that he would excuse any juror for cause if defense counsel determined during voir dire that the juror was prejudiced by the comments. No curative instruction was ever made.
 {¶ 14} We find that the trial court's comments amounted to more than harmless error, and appellant's due process rights were violated. Therefore, the trial court should have granted a mistrial.
 {¶ 15} There is ample case law on due process violations stemming from defendants who attend their trials in jailhouse clothing. The United States Supreme Court has held on numerous occasions that a defendant who is compelled to stand trial wearing identifiable prison clothing suffers prejudice that unconstitutionally undermines the presumption of innocence. See Estelle v. Williams (1976), 425 U.S. 501, 96 S.Ct. 1691,48 L.Ed.2d 126; United States v. Portilla-Quezada, 469 F.3d 1345;Holbrook v. Flynn (1986), 475 U.S. 560, *Page 7 106 S.Ct. 1340, 89 L.Ed.2d 525 ("prison clothes are unmistakable indications of the need to separate a defendant from the community at large").
 {¶ 16} While we can find no case law directly on point that addresses a trial judge who affirmatively informs the jury that a defendant wearing civilian clothing at trial is actually incarcerated, we find the case law cited above instructive on this issue. When a defendant exercises his right to wear a suit to trial, as appellant did in this case, the court must not undermine his attempt to maintain the presumption of innocence as the trial proceeds.
 {¶ 17} In this case, we find that the trial court not only made the initial error of commenting on appellant's incarceration, but he compounded the problem exponentially by adding that it was for "security purposes." The unavoidable inference to be drawn from this statement is that appellant is a dangerous person. The trial court then took neither of the obvious choices to correct the error. The court did not dismiss the yet-to-be impaneled jury before jeopardy attached. Nor did the court give a curative instruction, which it offered to give and the state argues defense counsel needed to request in order to receive.[2]
Either of these solutions would, at the very least, have been an acknowledgment by the court that its comments had eroded the presumption of innocence to which appellant is entitled and demonstrated a legitimate attempt to correct the error. *Page 8 
 {¶ 18} We find that the court's comments regarding appellant's incarceration and his potential security threat violated his due process rights. We believe the comments gave the jury the impression that appellant is guilty, and this is not harmless error, particularly in this case, which is so emotionally charged by its very nature.
 {¶ 19} Having determined that appellant's due process rights were violated, we hold that the court abused its discretion by not granting his motion for mistrial. Therefore, we reverse appellant's convictions and remand for a new trial. Appellant's remaining assignments of error are moot.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant recover of said appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., JUDGE
COLLEEN CONWAY COONEY, P.J., and ANN DYKE, J., CONCUR
 APPENDIX
Appellant's five remaining assignments of error:
II. The trial court improperly instructed the jury regarding accomplice testimony
pursuant to O.R.C. 2923.03(D) thereby depriving the defendant his right to a fair trial.
III. The trial court erred admitting the defendant's written statement as an exhibit and submitting it to the jury for their review during deliberations.
IV. The defendant's convictions were against the manifest weight of the evidence.
V. The defendant was deprived his right to a fair trial by the cumulative effect of all errors, even if any of those errors may be ruled as harmless.
VI. The consecutive maximum sentences imposed by the trial court were contrary to law and failed to apprise the defendant of post-release control.
[1] Appellant's remaining five assignments of error are included in the Appendix to this opinion. Four of his assignments seek a new trial.
[2] Appellant acknowledges that a curative instruction might only have served to reinforce the status of his incarceration. Nevertheless, Ohio case law holds that curative instructions have been recognized as an effective means of remedying errors or irregularities which occur during trial. State v. Zuern (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585. Further, juries are presumed to follow any curative instructions given by a trial court. State v. Henderson (1988), 39 Ohio St.3d 24, 33,528 N.E.2d 1237. At least if the trial court here had given such an instruction, our analysis may have been different. *Page 1