[Cite as *State v. Weil*, 2025-Ohio-657.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 24CA5 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| STEPHEN CHARLES WEIL, | : | |
| Defendant-Appellant. | : | **RELEASED 2/24/2025** |

_____

<u>APPEARANCES</u>:

Brian T. Goldberg, Cincinnati, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, Adam J. King, Highland County Assistant Prosecutor, Hillsboro, Ohio, for appellee.

_____

Hess, J.

**{¶1}** Stephen Charles Weil appeals his conviction following a jury trial of three counts of aggravated trafficking in methamphetamine, one in the vicinity of a school, and two counts of aggravated possession of methamphetamine. The jury also found that certain real estate was subject to forfeiture. Weil raises five assignments of error. First Weil contends that the trial court committed plain error and deprived him of his right to a fair trial when it informed the jury that he had not posted bond and was incarcerated. Next, he contends that his convictions were without sufficient evidence and were against the manifest weight of the evidence because the two primary witnesses for the State were confidential informants with an incentive to lie. Weil challenges the forfeiture order because (1) the trial court gave improper and incomplete jury instructions and (2) the trial court failed to conduct a proportionality review required by the forfeiture statute. The State

concedes the trial court erred concerning the forfeiture of real estate and that the forfeiture order should be reversed and vacated. Last, Weil contends that the trial court erred when it failed to give him the proper notices under the Reagan Tokes Law when sentencing him. The State concedes this error and agrees that the matter should be remanded for the limited purpose of resentencing.

{¶2}  We find that the trial court did not violate Weil's right to a fair trial when it gave curative instructions to the jury concerning Weil's custodial status. We also find that there was sufficient evidence for his convictions and his convictions were not against the manifest weight of the evidence because the drug purchases were controlled drug buys that were recorded, photographed, and testified to by four different witnesses. We overrule Weil's first and second assignments of error and affirm his convictions for aggravated drug trafficking and possession. We sustain his third, fourth, and fifth assignments of error, reverse and vacate the forfeiture order, and remand the cause for the limited purposes of resentencing.

## I. FACTS AND PROCEDURAL HISTORY

{¶3}  The Highland County grand jury indicted Weil on one count of aggravated trafficking in methamphetamine in the vicinity of a school zone in violation of R.C. 2925.03(A)(1), a second-degree felony; two counts of aggravated possession of methamphetamine in violation of R.C. 2925.11, a third-degree felony; and two counts of aggravated trafficking in methamphetamine in violation of R.C. 2925.03(A)(1), one a third-degree felony and one a fourth-degree felony. A forfeiture specification concerning certain real estate was also included. Weil pleaded not guilty, and the matter proceeded to a jury trial.

{¶4} At trial, the State called two experts in controlled substances and forensic drug chemistry employed by the Ohio Bureau of Criminal Investigation who identified the quantity and type of controlled substances involved in the drug purchases and testified that the substances were 6.90 grams of methamphetamine, 7.38 grams of methamphetamine, and 2.57 grams of methamphetamine.

{¶5} Joy Debo testified that in 2022 she began working with Investigator Randy Sanders and Investigator Chris Bowen of the Highland County Prosecutor's Office conducting undercover drug buys. She testified that on December 5, 2022, she set up an undercover purchase of methamphetamine from Weil through text messages. Photographs of the text messages were identified and admitted into evidence. Joy Debo took her husband, Steve Debo, with her on the drug buy. Weil and Joy Debo arranged to conduct the transaction at a gas station in Mowrystown. Joy Debo testified about the set-up procedures involved in making an undercover, or controlled, drug buy, including the video and audio recording devices used to record the buy. During the controlled buy, Investigator Sanders was in contact with her and giving her instructions. Joy Debo testified that she pulled into the gas station, handed Weil the money, and he handed her the methamphetamine. Joy Debo testified about the post-controlled buy procedures conducted by law enforcement.

{¶6} Joy Debo testified that she set up a second controlled drug buy with Weil on December 8, 2022, which was for the purchase of methamphetamine and was set up by text messages. This second controlled buy was arranged to take place at Weil's house in Danville and Joy Debo took her husband, Steve Debo, with her. Photographs of the text messages between Joy Debo and Weil were introduced into evidence. Joy Debo

testified that Investigators Sanders and Bowen conducted pre- and post-controlled buy procedures, searching her, providing her with money, and setting up an audio and video recorder. Joy Debo testified that when she arrived at Weil's house in Danville, he came out to her vehicle, and they exchanged money for methamphetamine.

{¶7}   Joy Debo arranged by text message a third controlled drug buy for methamphetamine on December 28, 2022 at Weil's house in Danville. Again, the text messages setting up the transaction were introduced into evidence. Joy Debo had her husband with her and they went through the pre- and post-controlled buy procedures with Investigator Sanders and another law enforcement officer. Joy Debo testified that she was paid for her work as an undercover drug buyer and was not charged for a prior offense because she agreed to cooperate with law enforcement. She testified that her husband, Steve Debo, drove her to each of the three drug purchases. She also testified that she was "100 percent" certain that the person who came out each time and delivered the drugs to her was Weil. She testified that she had met Weil before when she was still using drugs and had gone out to his house with a mutual friend. She spent approximately 20 to 25 minutes in Weil's house during that previous interaction.

{¶8}   Steve Debo testified that he had a prior felony conviction for drug trafficking but has been drug-free for approximately two years. Steve Debo testified that he knew Weil because he was someone Debo had purchased drugs from in the past. Steve Debo testified that he started working with Investigators Sanders and Bowen as part of his plea agreement "and to get out of trouble." Steve Debo testified that he was involved in the three controlled drug buys and he testified about the pre- and post-buy procedures. Steve Debo testified that on each of the three controlled buys, he witnessed Weil come out to

the vehicle and exchange drugs for money with his wife, Joy. Steve Debo and his wife have been married for 30 years, and he was also working with law enforcement to get his wife's sentence reduced.

{¶9}    Investigator Randy Sanders testified that he was an investigator for the Highland County Prosecutor's Office and has been in law enforcement for over 40 years. Investigator Sanders testified that he has worked in several thousand covert drug operations and has become familiar with the slang commonly used in the drug trade. Investigator Sanders testified about the protocol law enforcement follow when using civilians for controlled drug buys. Investigator Sanders maintained a surveillance report for the December 5, 8, and 28, 2022 controlled buys and the reports were entered into evidence. Investigator Sanders testified that he is able to see and hear everything that goes on in the vehicle the undercover civilians are travelling in because the audio and video recorder provides a live feed to him the entire time. Investigator Sanders identified the recording of the December 28, 2022 drug buy and played the video for the jury.

{¶10} Investigator Chris Bowen testified that he worked in the undercover task force at the Highland County Prosecutor's Office and has been employed with law enforcement for over 30 years. He testified about the December 5 and 8, 2022 controlled drug buys and played the video recordings of those two buys for the jury. Investigator Bowen also testified about photographs taken of Weil standing outside of Joy Debo's vehicle during the controlled drug buys.

{¶11} The jury found Weil guilty on all counts, including the forfeiture of real property. The trial court merged two of the aggravated possession counts with two of the aggravated trafficking counts and sentenced Weil on three aggravated trafficking counts

(counts one, three and five). The trial court imposed a 4 to 6-year prison term for aggravated trafficking in the vicinity of a school – count one; a 24-month prison term for aggravated trafficking – count three; and a 12-month prison term for aggravated trafficking – count five. Weil's real property was ordered forfeited pursuant to R.C. 2981.02. The trial court ordered the prison terms to be served consecutively for a total seven to nine-year prison term.

## II.  ASSIGNMENTS OF ERROR

{¶12}  Weil presents the following assignments of error:

I.  The trial court committed plain error and deprived Mr. Weil of his right to a fair and impartial trial by informing the jury that Mr. Weil was in custody during trial.

II.  Mr. Weil's convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence.

III.  The trial court committed plain error by giving improper jury instructions on criminal forfeiture.

IV.  The trial court committed plain error by ordering forfeiture of Mr. Weil's real estate without conducting a proportionality review as required.

V.  The trial court erred to the prejudice of Mr. Weil by failing to comply with the sentencing requirements contained in R.C. 2929.19(B)(2)(c).

## III.  LAW AND ANALYSIS

### A. Reference to Weil's Custodial Status

{¶13}  Weil contends that the trial court committed plain error when it informed the jury that he had not posted bond and was in the sheriff's custody. Weil concedes that his trial counsel failed to object and has forfeited all but plain error review.

#### 1. Plain Error Standard of Review

**{¶14}** An appellate court " 'will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Awan*, 22 Ohio St. 3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.  Appellate courts may, however, consider a forfeited argument using a plain-error analysis. *State v. Shields*, 2023-Ohio-2331, ¶ 72 (4th Dist.). Crim.R. 52(B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." It is the defendant's burden to "establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Fannon*, 2018-Ohio-5242, ¶ 21 (4th Dist.) "Notice of plain error under  Crim.R.  52(B)  is  to  be  taken  with  the  utmost  caution,  under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *State v. Pettiford*, 2024-Ohio-4447, ¶ 16 (4th Dist.).

### 2. Defendant's Custodial Status

**{¶15}** Cases  that  discuss  statements  made  in  front  of  the  jury  about  the defendant's incarceration during trial arise from the well-established case law about compelling a defendant to appear in identifiable prison or jail clothing at trial. *See Estelle v. Williams*, 425 U.S. 501 (1976) ("the State cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes"). The rationale of the holding in *Williams, supra,* is that being compelled to wear prison or jail clothing erodes the presumption of innocence. Courts have determined that an accused should not be compelled to go to trial in prison clothing

because of the possible impairment of the presumption of innocence which is basic to the adversary system. *State v. Hecker*, 1994 WL 386086, *3-4 (4th Dist. July 15, 1994). "This logic should be equally applied to verbal references concerning the jail status of an accused. Whether the reference is visual or verbal, the potential for prejudice is the same." *State v. Watters*, 2004-Ohio-2405, ¶ 15 (8th Dist.). However, a single reference to the incarceration status of the defendant does not have the same impact as wearing prison clothing throughout a trial. *State v. Sharp*, 2010-Ohio-3470, ¶ 107 (12th Dist.), citing *United States v. Washington*, 462 F.3d 1124, 1136-37 (9th Cir. 2006) ("the impact of referring to a defendant's incarceration is not constant as it is with prison garb").

{¶16} Here, during jury instructions and after it addressed the general issue of witness credibility, the trial court gave the following instruction:

> Now, you may have observed, during the course of this trial, that the defendant is in the custody of the Sheriff's Office. This is not an indication of his guilt or innocence, it simply means that he has not been able to post the bail that the Court required during the pendency of this action. And you may not consider the fact that he is in custody for any purpose.

{¶17} Evidently the trial court had some concern that the jury had witnessed Weil in the sheriff's custody at some point during the trial. As a result, the court gave curative instructions to minimize impairment to Weil's right to a presumption of innocence. However, Weil argues that these statements violated his right to a fair trial because there was no evidence he was wearing jail clothing or any clothing that would lead the jury to believe he was in custody during trial. We agree that there is no evidence in the record of what sort of situation occurred that may have made the jury believe that Weil was in custody. The record does not indicate what type of clothing Weil was wearing. None of the witnesses nor the prosecutor made any reference to Weil's custodial status. Unless

physical movements are verbally added to the record or remarked upon at a bench conference (such as whether Weil was escorted by law enforcement into the courtroom within the jury's view), we would not know what gave the trial court reason for concern.[1]

**{¶18}** Weil argues that his situation is like that of the defendant in *State v. Collins,* 2008-Ohio-3016 (8th Dist.). In *Collins*, the appellate court found that the defendant was denied his right to a fair trial when the trial court commented on the fact that the defendant was in jail, even though he appeared in civilian attire. The trial court addressed the jury prior to voir dire with the comment: " 'Don't talk to your fellow jurors about how you answered the questionnaire. Do not talk about the case at all. John and Pinkey and Harvey and Ben, you might see us at the cafeteria, the defendant is incarcerated, you're not going to see him in the cafeteria, I just want you to know that for security purposes . . . .' " *Collins* at ¶ 11, quoting the trial transcript. The defense counsel moved for a mistrial on the grounds that the defendant had "dressed in a suit for the express purpose of not letting the jury know he was incarcerated, and that the trial judge's comments suggested that [he] was incarcerated because he was a dangerous person." *Id.* at ¶ 12. The trial court denied the motion and offered to make curative instructions, but none were ever given. The appellate court found that the trial court "not only made the initial error of commenting on appellant's incarceration, but he compounded the problem exponentially by adding that it was for 'security purposes.' " *Id.* at ¶ 17.

> The trial court then took neither of the obvious choices to correct the error. The court did not dismiss the yet-to-be impaneled jury before jeopardy attached. Nor did the court give a curative instruction, which it offered to give and the state argues defense counsel needed to request in order to receive. Either of these solutions would, at the very least, have been an acknowledgment by the court that its comments had eroded the

---

[1] App.R. 9(E) provides a process for parties to modify the record if there are material omissions. No App.R. 9(E) modifications were made which would elucidate this issue.

presumption of innocence to which appellant is entitled and demonstrated a legitimate attempt to correct the error.

We find that the court's comments regarding appellant's incarceration and his potential security threat violated his due process rights. We believe the comments gave the jury the impression that appellant is guilty, and this is not harmless error, particularly in this case, which is so emotionally charged by its very nature.

(footnote omitted.) *Collins* at ¶ 17-18; *but see United States v. Henry*, 2012 WL 5881848, *6 (E.D. Pa. 2012) (rejecting defendant's argument that he was prejudiced when three witnesses referenced his incarceration during their trial testimony: "Defendant does not cite, and the Court has not found, a single decision in this Circuit where references to incarceration were held to constitute a due process violation. Additionally, courts outside this Circuit have consistently held, in line with *Faulk*, that the 'mere utterance of the words jail, prison, or arrest' does not amount to a constitutional violation.").

{¶19} We find Weil's situation readily distinguishable from *Collins* and more like *State v. Totarella*, 2002-Ohio-1175 (11th Dist.). In *Totarella*, the defendant argued that he was denied a fair trial because the trial court failed to take "adequate corrective action" after two deputies approached him at counsel table during a break and escorted him out of the courtroom before the jury had exited. Totarella's trial counsel argued that the jury was present for that, and the jury also may have seen him in the presence of the sheriff's deputies outside of the courtroom. He raised the possibility of declaring a mistrial. The trial court decided to address it with the following corrective instruction: "[I]t has come to my attention that some of you may have seen Mr. Totarella in the company of deputies. That's right. Mr. Totarella is in jail. Mr. Totarella is in jail because he has either chose to or did not meet bond. So he is being held there because of the bond, not meeting bail.

Not in there because of any imprisonment or any danger that he poses or anything of that nature." *Totarella* at ¶ 50.

**{¶20}** The appellate court found that the trial court's corrective instruction was sufficient to address any prejudice that may have occurred:

> Here, the jury's view of Totarella accompanied by the deputies was brief and inadvertent. Although it occurred within the courtroom, the trial proper had not yet begun and the deputies did not remain in Totarella's presence during the trial. We hold that the trial court adequately countered any possible prejudice suffered by Totarella by its corrective instruction.

*Totarella* at ¶ 51.

**{¶21}** Here, it is not apparent from the record what occurred that would have given the jury cause to know Weil's custodial status or given the trial court reason to give a curative instruction. The plain error analysis requires that Weil show an actual obvious error—not one that possibly may have occurred. *State v. Plymale,* 2016-Ohio-3340, ¶ 60 (4th Dist.). Regardless, the trial court's corrective instruction adequately countered any prejudice that may have occurred during trial. The instructions went further than those of the trial court in *Totarella,* because here the trial court included the additional instruction that Weil's custody was not indicative of guilt or innocence and could not be considered for any purpose by the jury.

**{¶22}** We overrule Weil's first assignment of error.

### B. Sufficiency of the Evidence and Manifest Weight of the Evidence

**{¶23}** Weil contends that the evidence did not support his convictions because there was no evidence that proved "beyond a reasonable doubt that he was in fact the person who possessed and trafficked methamphetamine." Weil argues that to reach the conclusion that he was the person who possessed and trafficked methamphetamine, the

jury would have to rely upon testimony from the Debos, who were motivated to lie to reduce their own sentences.

### 1. Standard of Review

### a. Sufficiency

**{¶24}** "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 2014-Ohio-1019, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; following *Jackson v. Virginia*, 443 U.S. 307 (1979); *State v. Bennington,* 2019-Ohio-4386, ¶ 11 (4th Dist.).

**{¶25}** An appellate court must construe the evidence in a "light most favorable to the prosecution." *State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). Further, "[t]he court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 2014-Ohio-4974, ¶ 22 (4th Dist.) citing *State v. Kirkland*, 2014-Ohio-1966, ¶ 132; *State v. Lodwick*, 2018-Ohio-3710, ¶ 9 (4th Dist.). Thus, "a reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.' " *State v. Davis*, 2013-Ohio-1504, ¶ 12 (4th Dist.), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). Rather, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

b. Manifest Weight

**{¶26}** In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To satisfy this test, the State must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt. *See State v. Eskridge*, 38 Ohio St.3d 56 (1988), syllabus; *State v. Harvey*, 2022-Ohio-2319, ¶ 24 (4th Dist). Because a trier of fact sees and hears the witnesses, appellate courts will also afford substantial deference to a trier of fact's credibility determinations. *State v. Schroeder*, 2019-Ohio-4136, ¶ 61 (4th Dist.); *State v. Colonel*, 2023-Ohio-3945, ¶ 50-54 (4th Dist.).

2. Elements of Aggravated Drug Possession and Trafficking

**{¶27}** Weil was convicted of multiple counts of aggravated possession of methamphetamine in violation of R.C. 2925.11(A): "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." And, he was convicted of multiple counts of aggravated trafficking in methamphetamine in violation of R.C. 2925.03(A)(1): "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog drug." Weil argues that there was insufficient evidence that he was the "person" who committed the offenses. He argues that the testimony from Joy Debo only showed that she texted with someone

"she believed to be Mr. Weil." Steve Debo testified that he "had never even seen Mr. Weil before he engaged in the alleged undercover buys with him." Weil argues that because these two witnesses were motivated to lie and could not definitively say that they were communicating with Weil by text, there was insufficient evidence to support his convictions for drug possession and trafficking.

{¶28}   Here, the jury was aware of Joy and Steve Debo's circumstances and could decide how much weight to give their testimony.  Additionally, the State not only presented the testimony of the Debos, who testified that Weil came up to their vehicle and exchanged drugs for money, but it also presented photographs and video recordings of the undercover drug buys, as well as the testimony of two law enforcement officers who supervised and witnessed the undercover drug buys. This evidence and testimony also identified Weil as the individual who sold drugs to Joy Debo and supported the Debos' version of what happened during the drug buys.

{¶29} We reject Weil's contention that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found he knowingly possessed and trafficked methamphetamine And, after our review of the record, and after we consider the evidence and testimony adduced at trial and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice such that Weil's convictions must be reversed and a new trial ordered.

{¶30}   We overrule Weil's second assignment of error.

## C. Forfeiture of Real Estate

{¶31} For his next two assignments of error, Weil challenges the forfeiture verdict because: (1) the trial court gave improper and incomplete jury instructions and (2) the trial court failed to conduct a proportionality review. The State concedes these two errors and agrees that the forfeiture order should be reversed and vacated.

## 1.  Forfeiture Jury Instructions

{¶32} Weil and the State assert that the trial court gave the incorrect standard of proof regarding forfeiture. The correct burden of proof is "clear and convincing evidence" as set forth in R.C. 2981.04(B) and the trial court incorrectly instructed the jury that the burden was "a preponderance of the evidence" standard. Additionally, the parties agree that the trial court failed to instruct the jury on the factors to use in determining whether the real property was used in a manner sufficient to warrant forfeiture as set forth in R.C. 2981.02(A)(2).

{¶33} R.C. 2981.04(B) governs specifications concerning forfeiture and provides in relevant part: "If the state . . . proves by clear and convincing evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code, after a proportionality review under section 2981.09 of the Revised Code when relevant, the trier of fact shall return a verdict of forfeiture that specifically describes the extent of the property subject to forfeiture."

{¶34} R.C. 2981.02(A)(2) governs property subject to forfeiture and provides:

(A)(2) In determining whether an alleged instrumentality was used in or was intended to be used in the commission or facilitation of an offense or an attempt, complicity, or conspiracy to commit an offense in a manner sufficient to warrant its forfeiture, the trier of fact shall consider the following factors the trier of fact determines are relevant:

(a) Whether the offense could not have been committed or attempted but for the presence of the instrumentality;

(b) Whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense;

(c) The extent to which the instrumentality furthered the commission of, or attempt to commit, the offense.

{¶35} Our review of the trial court's jury instruction governing forfeiture confirms that the parties' representations are accurate. The trial court incorrectly instructed the jury that the burden of proof was the preponderance of the evidence and it did not provide the three factors to be considered by the jury when making their forfeiture determination.

{¶36} Additionally, R.C. 2981.04(B) and R.C. 2981.09 require the trial court to conduct a proportionality review because property cannot be forfeited if its value is disproportionate to the severity of the offense. The proportionality review is a constitutional protection: "[W]e hold that forfeiture of property . . . is a form of punishment for a specified offense and, therefore, is a 'fine' for purposes of Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution. Accordingly, prior to entering an order of forfeiture, the trial court must make an independent determination whether forfeiture of that property is an 'excessive fine' prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions." *State v. Hill,* 70 Ohio St.3d 25, 34 (1994).

{¶37} R.C. 2981.09 provides a list of factors to be considered by the trial court when making the proportionality review. The record is void of any evidence that the trial court conducted a proportionality review. *State v. Luong,* 2012-Ohio-4519, ¶ 44 (12th Dist.) ("the trial court committed plain error in failing to conduct a proportionality review .

. . as required by R.C. 2981.04 and R.C. 2981.09. Forfeitures are not favored in law and equity, and forfeiture statutes must be interpreted strictly against the state.").

**{¶38}** We find that the trial court erred when it instructed the jury on the erroneous burden of proof and failed to provide them with the factors to be considered when making the forfeiture determination. We also find that the trial court failed to conduct a proportionality review, which constitutes plain error.

**{¶39}** We sustain Weil's third and fourth assignments of error.

### D. Sentencing Notifications

**{¶40}** For his final assignment of error, Weil contends that the trial court failed to provide him with the required notifications under R.C. 2929.19(B)(2)(c) and therefore the cause should be remanded for a new sentencing hearing. The State concedes that this error occurred and that the matter should be remanded for the limited purpose of resentencing.

### 1. Felony Sentencing Review

**{¶41}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2):

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

**{¶42}** We may vacate or modify a felony sentence if we clearly and convincingly find that the record does not support the trial court's findings. *State v. Layne*, 2021-Ohio-255, ¶ 6 (4th Dist.). " 'This is an extremely deferential standard of review.' " *Id.* at ¶ 8, quoting *State v. Pierce*, 2018-Ohio-3943, ¶ 8 (4th Dist.). Clear and convincing evidence is proof that is more than a "mere preponderance of the evidence" but not of such certainty as "beyond a reasonable doubt," and produces in the mind a "firm belief or conviction" as to the facts sought to be established. *State v. Conant*, 2020-Ohio-4319, ¶ 42 (4th Dist.).

**{¶43}** Here, Weil did not object to the trial court's instructions at sentencing and has forfeited this issue, absent plain error. *State v. Whitaker*, 2022-Ohio-2840, ¶ 166 (errors in sentencing that defendant fails to object to are reviewed for plain error). For a reviewing court to find plain error (1) there must be an error, i.e., "a deviation from a legal rule," (2) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights," i.e., it "must have affected the outcome of the trial." *State v. Wharton*, 2015-Ohio-5026, ¶ 31 (4th Dist.).

**{¶44}** A sentence is contrary to law if a trial court sentences an offender to an indefinite prison term under the Reagan Tokes Law and fails advise the offender of all the notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing. *State v. Long*, 2021-Ohio-2672, ¶ 27-29 (4th Dist.). "It is well settled that a sentence that is contrary to law is plain error and an appellate court may review it for plain error." *State v. Burrell*, 2024-Ohio-638, ¶ 14 (11th Dist.), citing *State v. Efford*, 2023-Ohio-3360, ¶ 18 (8th Dist.).

**{¶45}** R.C. 2929.19(B)(2)(c) sets out the notifications that are to be provided in accordance with subsections (B)(1) and (2) which mandates that the court notify the offender at the sentencing hearing:

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i)     That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii)    That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii)   That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv)    That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v)     That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

**{¶46}** The trial court did not provide the notices at the sentencing hearing concerning the Ohio Department of Rehabilitation and Correction (ODRC) hearing process outlined in R.C. 2929.19(B)(2)(c). The trial court explained that the ODRC could extend his term, but did not provide any of the other notifications: "[ODRC] could choose to extend that to an additional two years or six years total, if they decide to do that under

the Reagan Tokes Law, but the first four is mandatory." Thus, we find that Weil's sentence was contrary to law because the trial court failed to provide the full notice as required by subpart (B)(2)(c). *State v. Price*, 2024-Ohio-1641, ¶ 5-11 (4th Dist.).

**{¶47}** We sustain Weil's fifth assignment of error.

### IV. CONCLUSION

**{¶48}** We overrule Weil's first and second assignments of error and affirm his convictions for aggravated drug trafficking and possession. We sustain his third and fourth assignments of error and reverse and vacate the forfeiture order. We sustain his fifth assignment of error, reverse his sentence, and remand the cause for the limited purpose of resentencing.

JUDGMENT AFFIRMED, IN PART,

REVERSED AND VACATED, IN PART, AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED, IN PART, REVERSED, IN PART, AND CAUSE REMANDED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
                Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**